IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.          ) | Case No. 7:16-cr-30026 |
| ) | |
| ) | By: Michael F. Urbanski |
| JAMES ALBERT BUMBRY, ) | |
| Defendant ) | Chief United States District Judge |

**MEMORANDUM OPINION**

This matter comes before the court on defendant James Albert Bumbry's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), ECF No. 1327. The government opposes Bumbry's motion, ECF No. 1333, and Bumbry has filed a reply, ECF No. 1334. Because the court finds that the 18 U.S.C. § 3553(a) factors weigh against release in this case, the court will **DENY** Bumbry's motion.

I.

On July 7, 2017, Bumbry pled guilty pursuant to a Rule 11(c)(1)(C) plea agreement to participating in the affairs of an enterprise through a pattern of racketeering conspiracy in violation of 18 U.S.C. § 1962(d). Bumbry was a member of the violent street gang Mad Stone Bloods (MSB) in Virginia, a criminal enterprise as defined in 18 U.S.C. § 1961(4). On December 19, 2017, Bumbry was sentenced to 80 months of incarceration for his participation in the racketeering conspiracy. Bumbry is currently incarcerated at FCI Cumberland with an expected home detention eligibility date of January 9, 2021, and a projected release date of July 9, 2021.

Bumbry seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A), arguing that his various medical issues constitute "extraordinary and compelling" reasons warranting a sentence reduction. Bumbry suffers from type 2 diabetes, hypertension, mild anterior apical lateral ischemia, and hyperlipidemia. Bumbry asserts that "the extraordinary and compelling reasons . . . supporting [his] sentence reduction are the rampant spread of COVID-19 throughout the BOP, in general, and [his] high susceptibility to serious complications from the virus." ECF No. 1327, at 2. Bumbry asks the court to reduce his sentence to home confinement, and the government opposes any sentence reduction for Bumbry. As this matter is fully briefed, it is ripe for disposition.[1]

## II.

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act ("FSA"), authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

---

[1] The court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

Accordingly, Bumbry's requested relief requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors and if Bumbry is a danger to the safety of anyone else or the community.

i. <u>Bumbry has exhausted his administrative remedies.</u>

The provision allowing defendants, in addition to the Bureau of Prisons (BOP), to bring motions under § 3582(c) was added by the First Step Act in order to "increas[e] the use and transparency of compassionate release." Pub. L. No. 115-391, 132 Stat. 5239 (2018). While the statute allows a defendant to bring the motion before the district court, a petitioner must first exhaust his administrative remedies. <u>See</u> 18 U.S.C. § 3582(c)(1)(A). A petitioner must satisfy one of two conditions, whichever is earlier: (i) "the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf" or (ii) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility[.]" <u>Id.</u> The first condition requires that the defendant fully exhaust all administrative rights – this means that it is not enough for the warden to respond within 30 days by denying the request for compassionate release. If the warden denies the request within 30 days, the petitioner must then exhaust all administrative appeals available through the BOP. The second condition can only be met after the lapse of 30 days from when the warden received the petitioner's request and has not responded.

Here, Bumbry made a written request to the warden on April 19, 2020, requesting compassionate release. <u>See</u> ECF No. 1327-3. On April 30, 2020, the warden responded, but

did not make a determination as to Bumbry's request. Bumbry filed his motion on June 9, 2020, more than 30 days from the original request, and the warden has failed to respond. Accordingly, the court finds that Bumbry has exhausted his administrative remedies because 30 days has elapsed from when the warden received Bumbry's request and the warden has not responded to the merits of the request.

    ii.    <u>Bumbry presents extraordinary and compelling circumstances.</u>

Because Bumbry has exhausted his administrative remedies, the court must then consider if it should "reduce the term of imprisonment." <u>See</u> 18 U.S.C. § 3582(c)(1)(A). The U.S. Sentencing Guidelines Manual ("USSG") § 1B1.13 application notes state that "extraordinary and compelling reasons" exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) as determined by the Director of the BOP, for "other reasons" other than, or in combination with, the reasons described in Application Notes (A)-(C). <u>Id.</u>, at cmt. n. 1(A)-(D).

The court finds that Bumbry's underlying medical conditions, when paired with the COVID-19 pandemic, present "extraordinary and compelling reasons" to reduce his sentence under Application Note A. <u>Id.</u>, at cmt. n. 1(A). "In the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of

4

contracting the disease at his prison facility." United States v. Harper, No. 7:18-cr-25, 2020 WL 2046381, at *3 (W.D. Va. Apr. 28, 2020) (citing United States v. Feiling, No. 3:19-cr-112, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020)).

Due to Bumbry's medical conditions, he is more susceptible to COVID-19. The Centers for Disease Control and Prevention (CDC) has issued guidance on specific risk factors that place individuals at a higher risk of severe outcomes from COVID-19, including type 2 diabetes.[2] See Wilson v. United States, No. 2:11-cr-180, 2020 WL 3315995, at *3 (E.D. Va. June 18, 2020) ("When assessing compassionate release motions during the pandemic, the Court examines the [CDC's] list of risk factors for severe COVID-19 complications."). Here, Bumbry suffers from type 2 diabetes, hypertension, mild anterior apical lateral ischemia, and hyperlipidemia. In their brief in opposition, the government concedes that "Bumbry's diabetes puts him at higher risk for severe illness if he contracts COVID-19. Though during ordinary times Bumbry's diabetes would not qualify as extraordinary and compelling under the FSA, given the ongoing COVID-19 pandemic, the United States recognizes that Bumbry's medical conditions currently present an exceptional and compelling circumstance." ECF No. 1333, at 9. The court agrees with Bumbry and the United States. Accordingly, the court finds that Bumbry has demonstrated extraordinary and compelling reasons exist warranting a reduction in his sentence.

   iii.   <u>Bumbry is a danger to the safety of the community and a sentence reduction is inappropriate after considering the § 3553(a) factors.</u>

---

[2] Available at: https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/people-at-higher-risk.html (last visited August 11, 2020).

Having found that extraordinary and compelling reasons exist to warrant a reduction in Bumbry's sentence, the court must consider if Bumbry is a danger to the safety of anyone else or the community and if a sentence reduction is consistent with the applicable § 3553(a) factors. See 18 U.S.C. § 3582(c)(1)(A); § 1B1.13(2). Pursuant to § 1B1.13(2), the court must consider the 18 U.S.C. § 3142(g) factors in determining whether Bumbry is a danger to the safety of any other person or to the community. The relevant factors include "the nature and circumstances of the offense charged"; "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, . . . community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history"; and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." See United States v. Rodriguez, ___ F.Supp.3d ___, 2020 WL 1627331, at *11 (E.D. Pa. Apr. 1, 2020).

Bumbry pled guilty to involvement in a serious racketeering conspiracy as a member of MSB, a violent street gang. In his written Statement of Facts accompanying his guilty plea, Bumbry acknowledged that in 2013 and through February 2014 he was the highest ranking MSB leader on the streets of Virginia.[3] In 2012, Bumbry conspired with senior MSB gang leaders to distribute cocaine from New York to Virginia, and in 2013 distributed cocaine and phenobarbital for the purpose of earning money for the gang. Bumbry also has a significant criminal history, including multiple convictions for possession of a firearm by a convicted felon and one conviction with two counts of brandishing a firearm. See ECF No. 1330, at 22-24. The court finds that Bumbry's involvement with MSB and continued ownership,

---

[3] Although there were higher ranking members of MSB in Virginia, they were incarcerated at that time.

possession, and use of a firearm demonstrates his continued reluctance to abide by federal law. Given the danger posed by Bumbry's gang activities and as reflected in his prior criminal history, the court cannot conclude that he should be released prior to completion of his sentence.

The court must also consider if a sentence reduction is consistent with the applicable § 3553(a) factors. See 18 U.S.C. § 3582(c)(1)(A). Those factors include: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. See 18 U.S.C. § 3553(a). Here, the § 3553(a) factors weigh in favor of continued incarceration.

As discussed above, Bumbry pled guilty to his involvement in a serious racketeering conspiracy as a member of MSB. Bumbry's criminal history resulted a criminal history score of IV at his sentencing. As such, the court imposed an 80-month sentence on Bumbry due to the seriousness of his crimes and the danger that street gangs pose to the citizens of Virginia. The court found that an 80-month sentence was "sufficient, but not greater than necessary." Id. The court also focuses on the need to afford specific and general deterrence, as just punishment is necessary to deter both Bumbry and other individuals' future involvement in street gangs.

While the court is sympathetic to Bumbry's medical conditions, it cannot release him until he serves his sentence. The court notes that Bumbry is housed at FCI Cumberland and there are no current positive tests for COVID-19 at the facility.[4] As such, the BOP is in a better position to offer Bumbry the medical care his conditions demand rather than release Bumbry to Roanoke, Virginia, where cases in the Southwest Region of Virginia have been steadily increasing.[5] Accordingly, the court finds that the § 3553(a) factors weigh against a reduction in Bumbry's sentence.

### III.

For the reasons stated herein, the court **DENIES** Bumbry's motion for compassionate release, ECF No. 1327. The clerk is directed to send a copy of this memorandum opinion and accompanying order to the petitioner, his counsel of record, and the United States. An appropriate order will be entered.

It is so **ORDERED**.

Entered: AUGUST 13, 2020

Michael F. Urbanski
Chief U.S. District Judge
2020.08.13 12:16:28 -04'00'

Michael F. Urbanski
Chief United States District Judge

---

[4] Available at: https://www.bop.gov/coronavirus/ (last visited: August 11, 2020).
[5] Available at: https://www.vdh.virginia.gov/coronavirus/covid-19-daily-dashboard/ (last visited: August 11, 2020).